UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JULIA PITKIN-SHANTZ,

                              Plaintiff,

        vs.                                              1:25-CV-555
                                                         (MAD/PJE)
WILLIAM J. NEWMAN D/B/A ATRIUM FINANCIAL
GROUP, MNM CONSULTING GROUP, LLC,
NORTHWESTERN MUTUAL WEALTH
MANAGEMENT COMPANY, NORTHWESTERN
MUTUAL INVESTMENT SERVICES, LLC, and THE
NORTHWESTERN MUTUAL LIFE INSURANCE
COMPANY,

                              Defendants.

---

APPEARANCES:                            OF COUNSEL:

ABRAMS, FENSTERMAN, LLP                 KAREN SANDERS, ESQ.
2280 East Avenue - 1st Floor            MAUREEN T. BASS, ESQ.
Rochester, New York 14610
Attorneys for Plaintiff

HODGSON RUSS LLP                        GLEN P. DOHERTY, ESQ.
677 Broadway - Suite 401                KEGAN SHEEHAN, ESQ.
Albany, New York 12207
Attorneys for Defendants William J. Newman
*d/b/a* Atrium Financial Group and
MNM Consulting Group, LLC

MORGAN, LEWIS & BOCKIUS LLP             SEAN P. LYNCH, ESQ.
502 Carnegie Center                     GIANNI K. GARYFALLOS, ESQ.
Princeton, New Jersey 08540
Attorneys for Defendants Northwestern Mutual
Wealth Management Company, Northwestern
Mutual Investment Services, LLC, and The
Northwestern Mutual Life Insurance Company

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

1

## I. INTRODUCTION

Plaintiff Julia Pitkin-Shantz commenced this action on May 2, 2025, bringing employment-related claims against Defendants William J. Newman, d/b/a Atrium Financial ("Newman") and MNM Consulting Group, LLC ("MNM"), as well as Northwestern Mutual Wealth Management Company ("NMWMC"), Northwestern Mutual Investment Services, LLC ("Northwestern Investment"), and The Northwestern Mutual Life Insurance Company (collectively with NMWMC and Northwestern Investment, "Northwestern Defendants"). *See* Dkt. No. 1. Specifically, Plaintiff alleges the following claims: (1) violation of the Fair Labor Standards Act ("FLSA") against all Defendants; (2) violation of the New York Labor Law ("NYLL") against all Defendants; (3) breach of contract against Newman and MNM; (4) tortious interference with prospective economic advantage against Newman; (5) discrimination on the basis of sex and age under the New York State Human Rights Law ("NYSHRL") against all Defendants; (6) retaliation for opposing discrimination under the NYSHRL against all Defendants; and (7) unjust enrichment against Newman. *See id.*

Newman and MNM answered the complaint on July 22, 2025. *See* Dkt. No. 17. On August 26, 2025, Northwestern Defendants moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 23. Plaintiff opposes the motion, *see* Dkt. No. 24, and Northwestern Defendants replied, *see* Dkt. No. 25. For the reasons that follow, the motion to dismiss is denied.

## II. BACKGROUND[1]

---

[1] Unless otherwise noted, the facts recited herein are drawn from the complaint and are assumed true at this juncture.

Plaintiff, a 67-year-old woman at the time this action was filed, was employed by Newman and MNM as an Associate Representative, beginning on March 30, 2018. Dkt. No. 1 at ¶¶ 2, 10. Plaintiff also claims to have been employed by the Northwestern Defendants "[u]pon information and belief." *Id.* at ¶ 3. Among other certifications, Plaintiff holds a Master of Business Administration degree and is a Certified Financial Planner. *See id.* at ¶ 12. Northwestern Investment offers investment brokerage services and NMWMC is a federal savings bank that offers private client services; both of these companies are a subsidiaries of The Northwestern Mutual Life Insurance Company, which is engaged in selling life and disability insurance. *See id.* at ¶¶ 13-15. MNM holds itself out as doing business as Atrium Financial Group ("Atrium")[2] and MNM agreed to be responsible for Newman's obligations to Plaintiff. *See id.* at ¶¶ 16-17.

Atrium's website states that its employees and advisors provide investment brokerage services as a registered representative of Northwestern Investment and provide investment advisory services as advisors of NMWMC. *See id.* at ¶¶ 26-27. Atrium's website also states "that its Albany [o]ffice is located at 1 Northwestern Boulevard, Albany, NY 12211." *Id.* at ¶ 29. "Northwestern Defendants' website provides that their Albany office is at the same location, 1 Northwestern Boulevard, Albany, NY 12211." *Id.* at ¶ 30.

Atrium/MNM provide financial services to clients, including financial planning, wealth management, retirement planning, and estate planning, on behalf of Northwestern Defendants. *See id.* at ¶¶ 24-46. According to the complaint, Plaintiff was an employee of Newman/Atrium, MNM, and Northwestern Defendants. *See id.* at ¶¶ 31-33.

---

[2] It appears, based on the complaint, that both Newman and MNM do business as Atrium. *See* Dkt. No. 1 at ¶¶ 16, 19.

3

As part of her onboarding process, Plaintiff was required to fill out an "Advisor Registration Consent Form For Associate Financial Representative" (the "AFR Form"), which included a header with the Northwestern Defendants' logo. *See id.* at ¶¶ 34-35. The AFR Form listed Newman as Plaintiff's "Employing Financial Representative," and Alessandro Tronco, a Managing Partner of Northwestern Defendants, as Plaintiff's "Financial Representative Supervisor." *Id.* at ¶ 36. The AFR Form stated that "[t]he Associate Financial Representative understands that failure [to accurately fill out certain paperwork] may result in termination as an Associate Financial Advisor from NMWMC." *Id.* at ¶ 37.

As part of the onboarding process, Plaintiff was also required to fill out a "Northwestern Mutual Wealth Management Company Associate Representative Agreement" (the "NMWMC Agreement") which stated that Plaintiff was appointed "to assist [Newman] in rendering certain investment advisory and/or trust services on behalf of NMWMC." *Id.* at ¶¶ 38-40. The NMWMC Agreement, among other things, required Newman to pay Plaintiff in accordance with the procedures and policies established by NMWMC, precluded Plaintiff from being associated with other financial institutions without NMWMC's written permission, and gave Newman and NMWMC the authority to independently terminate the NMWMC Agreement. *See id.* at ¶¶ 42-45. In or around September 2021, Plaintiff entered into another NMWMC Agreement, which listed Atrium as the employing Representative, instead of Newman. *See id.* at ¶ 46.

Plaintiff alleges that during her employment, she was wrongfully classified as an exempt employee and Defendants failed to pay her regular and overtime wages, "even though Plaintiff regularly worked over 40 hours per week, rather than the 30 hours per week listed on her paystub." *Id.* at ¶ 4. Plaintiff was also routinely discriminated against on account of her age and gender between 2018 and 2023. *Id.* at ¶ 5. Specifically, Plaintiff alleges she was (1) corrected, in

front of other employees, "for speaking in meetings and being direct, while male colleagues were complimented for the same behavior," (2) "disciplined and received complaints for taking too long to respond to or complete tasks as compared to younger employees," (3) received less support from senior management than her male counterparts, (4) told by Newman "that he 'couldn't stand to hear [her] voice' so she was no longer allowed to attend certain meetings," (5) "told not to talk in team or Town Hall meetings because team members say Plaintiff 'brings down the team with [her] comments' and that Plaintiff 'does not respect them,'" (6) "told that her 'tone of voice' was unacceptable and disruptive," (7) excluded from meetings which "directly affected her ability to provide accurate fiduciary advice to her clients," (8) "excluded from projects that would have increased her income but were instead awarded to less qualified male employees," (9) "spoken to by leadership in a demeaning manner," and (10) not informed of decisions made after meetings from which she was excluded, thereby forcing her to give different advice to her clients. *Id.* at ¶ 7.

Ultimately, Plaintiff alleges she was wrongfully terminated by Defendants, who reneged on their promise to pay for the value of her practice and book of business. *See id.* at ¶ 8. And, after her termination, Newman interfered with Plaintiff's business prospects to ensure that she would not be able to work for Northwestern again. *See id.* at ¶ 9.

In the motion now pending before the Court, Northwestern Defendants contend they cannot be held liable for violations of the FLSA, NYLL, or NYSHRL because Plaintiff has failed to plead a requisite employer/employee relationship with Northwestern Defendants. *See* Dkt. No. 23-1 at 6. Instead, according to Northwestern Defendants, Plaintiff was "three levels removed" from an employment relationship with them and that it was Newman/Atrium/MNM alone who hired, employed, paid, managed, and terminated Plaintiff. *Id.* at 6-7, 12-20. Additionally,

Northwestern Defendants argue that the NYSHRL claims fail because the complaint is devoid of allegations of an adverse employment action taken by them. *See id.* at 20-21.

In opposition to the motion, Plaintiff contends that the complaint alleges the existence of an employment relationship with Northwestern Defendants. *See* Dkt. No. 24 at 6-10. Plaintiff points to the provisions of the NMWMC Agreement which provides for supervisory control, policy compliance, right to termination, and compensation structure. *See id.* Further, Plaintiff argues that the complaint alleges Atrium specifically held Plaintiff out as an employee of Northwestern Investment on its website. *See id.* Thus, Plaintiff contends the NMWMC Agreement and the circumstances of her employment demonstrate a level of control and dependency consistent with an employment relationship between herself and Northwestern Defendants. *See id.*

### III. DISCUSSION

#### A.      Legal Standard

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d

6

391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570.

## B.     FLSA and NYLL Claims

Employment status for purposes of NYLL claims are typically analyzed congruently with FLSA claims because many of the same standards apply. *See Paz v. Piedra*, No. 09-CV-03977, 2012 WL 12518495, *5 (S.D.N.Y. Jan. 12, 2012) ("The NYLL's definition of employment is nearly identical to the FLSA's . . . . Accordingly, this Court's conclusions with respect to each defendant's status as an employer under the FLSA apply equally to the defendants' statuses as employers under the NYLL") (citations omitted); *see also Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 924 (S.D.N.Y. 2013) ("[T]here appears to have never been a case in which a

worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)"). Because courts generally analyze these claims together, and the parties do so in their submissions, the Court will proceed with a congruent analysis for purposes of the present motion.

The FLSA and the NYLL provide minimum wage and overtime pay requirements for covered, non-exempt workers who are employed by an enterprise engaged in commerce. *See* 29 U.S.C. § 201 *et seq.*; N.Y. Lab. Law § 652; 12 N.Y.C.R.R. §§ 142-2.1, 142-2.2. "Both [the FLSA and the NYLL] mandate that employers compensate employees at one-and-a-half times their normal hourly rate for all hours worked in excess of 40 each week." *Murphy v. Heartshare Hum. Servs. of N.Y.*, 254 F. Supp. 3d 392, 395 (E.D.N.Y. 2017).

To be held liable under the FLSA, one must be an "employer," which is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The definition of employer "is broad, and courts must construe the statute broadly in light of its remedial nature." *Aquino v. Uber Techs., Inc.*, 671 F. Supp. 3d 338, 344 (S.D.N.Y. 2023) (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973); *Herman v. RSR Sec. Servs. LTD.*, 172 F.3d 132, 139 (2d Cir. 1999)).

Indeed, the "striking breadth" of the FLSA's definition of "employ" "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). "'[E]mployment for FLSA purposes [i]s a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'" *Murphy*, 254 F. Supp. 3d at 396 (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008)). "Under regulations promulgated by the Department of Labor . . . , FLSA overtime pay requirements apply to both single and joint employers." *Id.* (citation omitted). Because the

relevant sections of the FLSA and NYLL apply only to employers, a plaintiff bringing claims against multiple entities must plausibly plead facts demonstrating that the employers were in effect jointly the plaintiff's employer in order for the claims to survive a motion to dismiss. *See id.* at 395.

"The critical inquiry is whether the [entity] 'possessed the power to control the workers in question . . . with an eye to the 'economic reality' presented by the facts of each case." *Aquino*, 671 F. Supp. 3d at 344 (quoting *Herman*, 172 F.3d at 139). "The 'economic reality' test is designed to constrain the otherwise broadly applicable plain language of the statute, which 'taken literally would support liability against any agent or employee with supervisory power over [other] employees.'" *Id.* (quoting *Johnson v. A.P. Products, LTD.*, 934 F. Supp. 625, 628-29 (S.D.N.Y. 1996)) (other citation omitted).

Courts look to certain factors to determine whether individuals are "employees" or independent contractors within the meaning of the FLSA, such as

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988) (citing *United States v. Silk*, 331 U.S. 704, 716 (1947)). "No factor is dispositive, and the test is based on the totality of the circumstances." *Aquino*, 671 F. Supp. 3d at 345 (citing *Brock*, 840 F.2d 1054 at 1058-59; *Calderon v. Koneska Health*, No. 22-CV-7808, 2023 WL 2612216, *2 (S.D.N.Y. Mar. 22, 2023)).

Northwestern Defendants' motion relies almost entirely on an "economic reality" test propounded in *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). As the Second

9

Circuit noted in *Brock* (a case decided four years after *Carter*), the factors considered in *Carter* are "somewhat different" than those derived from the Supreme Court's decision in *Silk*. *Brock*, 840 F.2d at 1058-59. Indeed, the test derived from *Carter* is merely one of many economic reality tests that have been used to determine whether an employment relationship exists. *See Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131, 139 n.18 (2d Cir. 2017) ("This Court has devised many such 'economic reality' tests in the context of the FLSA") (collecting cases).

In more recent opinions, the Second Circuit has noted that "[b]ecause *Carter* defines employment more narrowly than FLSA requires, satisfying [the *Carter* economic reality] test is sufficient, but not necessary, to show joint employment." *Greenawalt v. AT & T Mobility LLC*, 642 Fed. Appx. 36, 37 (2d Cir. 2016) (summary order) (citing *Zheng v. Liberty Apparel Co.,* 355 F.3d 61, 71 (2d Cir. 2003)). The Circuit has, therefore, expressed a preference for the test set out in *Brock* in certain circumstances because it "focuses on whether 'the workers depend upon someone else's business . . . or are in business for themselves,' . . . and thus is 'typically more relevant for distinguishing between independent contractors and employees,' . . . than for determining by whom workers who are assumed to be employees are employed." *Id.* (quoting *Brock*, 840 F.2d at 1059 and *Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir. 2012)) (internal citations omitted).

Moreover, these economic reality tests require factual inquiries. *See Aquino*, 671 F. Supp. 3d at 346. Thus, courts are careful when considering the relevant factors at the motion to dismiss stage;

> [due to the] fact-intensive nature of the economic realities test . . . , courts must focus on the actual experience of the plaintiff and not just contract provisions governing the alleged employment relationship. In other words, the facts on the ground might differ

10

> from what the contract specified or contemplated about the
> relationship between the worker and entity.

*Id.*

Regardless of which test should be used to aid the Court's analysis here, it is beyond debate that the "'mechanical application'" of any of these economic reality tests is improper. *Saleem*, 854 F.3d at 140 ("[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts, determined by reference not to isolated factors but rather upon the circumstances of the whole activity") (citations, internal quotation marks, and alterations omitted). As such, the Court does not accept Northwestern Defendants' invitation to inappropriately rely exclusively on the rigid *Carter* test as the dispositive list of factors that Plaintiff must satisfy at the pleading stage. *See* Dkt. No. 23-1 at 12-15; *see also Zheng*, 355 F.3d at 64, 71 (finding district court erred in limiting its analysis to the four factors in *Carter*, as those factors are not "the exclusive touchstone of the joint employment inquiry under the FLSA").

Here, looking at the totality of the circumstances, the Complaint contains sufficient factual allegations to render it plausible that Northwestern Defendants were Plaintiff's employer under the FLSA and NYLL. Plaintiff's allegations are primarily supported by the NMWMC Agreement. *See* Dkt. No. 1 at ¶¶ 38, 41-46. As Plaintiff argues in her opposition papers, the NMWMC Agreement contains provisions that plausibly indicate an employment relationship between Plaintiff and Northwestern Defendants. *See* Dkt. No. 24 at 7. Four specific provisions are particularly relevant: (1) NMWMC agreed to supervise Plaintiff's investment advisory and/or trust activities, and Plaintiff expressly consented to this supervision, *see* Dkt. No. 1 at ¶ 41; (2) Plaintiff was required to adhere to all existing and future rules, regulations, requirements, standards,

11

policies and procedures established by NMWMC, *see id.* at ¶ 43; (3) NMWMC reserved the right to terminate Plaintiff's employment under the NMWMC Agreement at any time, *see id.* at ¶ 44; (4) Plaintiff's compensation was governed by the policies and procedures established by NMWMC, *see id.* at ¶ 42; and (5) the agreement explicitly states that "NMWMC hereby appoints the Associate Representative [Plaintiff] to assist the Representative [Newman/MNM/Atrium] in rendering certain investment advisory and/or trust services on behalf of NMWMC[,]" *id.* at ¶ 40.

Instead of addressing the provisions of the NMWMC Agreement referenced in the complaint,[3] Northwestern Defendants contend that a wholly different contract (an "Associate Agent's Contract") governed the employer/employee relationship. *See* Dkt. No. 23 at 9-10. Northwestern Defendants represent that this "Associate Agent's Contract" is referenced in the complaint. *See id.* However, careful review of the complaint reveals that the only agreements upon which Plaintiff relies are the NMWMC Agreement[4] and AFR Form—the "Associate Agent's Contract" is not referenced a single time. *See generally* Dkt. No. 1. As Northwestern Defendants

---

[3] In their reply brief, Northwestern Defendants do address the NMWMC Agreement, but they selectively reference provisions helpful to their arguments while fastidiously avoiding provisions that cut the other way. For example, Northwestern Defendants are correct that the NMWMC Agreement states, in its "Miscellaneous" section, that "nothing herein shall be construed to make the Associate Representative [Plaintiff] an employee of NMWMC." Dkt. No. 25-2. But, as discussed, the agreement contains a myriad of other provisions that are indicative of a level of control consistent with the broad definition of employment under the FLSA. And, more importantly, contractual terms alone are not dispositive. *See Aquino*, 671 F. Supp. 3d at 346 ("[C]ourts must focus on the actual experience of the plaintiff and not just contract provisions governing the alleged employment relationship. In other words, the facts on the ground might differ from what the contract specified or contemplated about the relationship between the worker and entity").

[4] Northwestern Defendants attach the NMWMC Agreement to their reply brief. *See* Dkt. No. 25-2. The Court can (and does) consider the NMWMC Agreement, as it is explicitly quoted in the complaint. *See Reed v. Queens Vill. Comm. for Mental Health for J-CAP, Inc.*, No. 18-CV-3114, 2019 WL 4452386, *5 (E.D.N.Y. Sept. 17, 2019) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) (other citations omitted).

move pursuant to Rule 12(b)(6), the Court cannot consider this purported contract that was not incorporated by reference, nor integral, to the complaint. *See, e.g.*, *Mason Tenders Dist. Council of Greater N.Y. v. W. Sur. Co.*, No. 15-CV-9600, 2016 WL 4098568, *2 (S.D.N.Y. July 28, 2016) (declining to consider contracts not mentioned in, or relied upon in drafting, complaint).

Moreover, the complaint contains allegations besides the terms of the NMWMC Agreement that, accepted as true, could establish the requisite employment relationship. For instance, Plaintiff alleges: (1) Atrium held out Plaintiff as an employee of Northwestern Investment on its website, *see* Dkt. No. 1 at ¶ 27; (2) the AFR Form Plaintiff signed as part of her onboarding process "included a header with the Northwestern Defendants' marketing name and logo[,]" *id.* at ¶ 35; and (3) Northwestern Defendants' website states that their Albany office is located at the same location as Atrium's, *see id.* at ¶¶ 29-30. As such, accepting the allegations as true and drawing all reasonable inferences in Plaintiff's favor, as the Court must, Plaintiff has met her burden of plausibly alleging her status as Northwestern Defendants' employee under the FLSA and NYLL.[5]

---

[5] Northwestern Defendants take the position that Plaintiff fails to satisfy the Rule 12(b)(6) pleading standards because she merely alleges that she was employed by Northwestern Defendants "'[u]pon information and belief[.]'" *See* Dkt. No. 23-1 at 14 (quoting Dkt. No. 1 at ¶¶ 1, 33). However, "a plaintiff may plead facts on information and belief where the facts are particularly within the possession and control of the defendant." *Pappas v. XP Controle Participacoes S.A.*, No. 1:19-CV-11137, 2023 WL 317353, *4 n.5 (S.D.N.Y. Jan. 18, 2023) (quoting *McHenry v. Fox News Network*, 510 F. Supp. 3d 51, 70 n.9 (S.D.N.Y. 2020)). As discussed, Plaintiff has pleaded facts regarding the control and supervision that Northwestern Defendants had over her employment. *See* Dkt. No. 1 at ¶¶ 27-46. Other facts regarding the specific policies and standards Plaintiff was held to are within Defendants' control. Thus, at this stage, the Court finds the complaint to meet the pleading requirements. *See Pappas*, 2023 WL 317353, at *4 n.5 (finding allegations of joint employment made upon information and belief sufficient where the plaintiff also pleaded facts about the purported joint employer's role in terminating the plaintiff's employment).

13

Northwestern Defendant's other arguments do not compel a different outcome. In support of its arguments that courts have recognized that "Northwestern Mutual's general agency model does not create an employment relationship" and "employees of independent contractor agents are not employees of the insurance company," Northwestern Defendants cite only cases decided at summary judgment. *See* Dkt. No. 23-1 at 15-17, 19 (citing *Rose v. Nw. Mut. Life Ins. Co.*, 220 F. Supp. 3d 363, 366-67 (E.D.N.Y. 2016); *Foy v. Pat Donalson Agency*, 946 F. Supp. 2d 1250, 1256 (N.D. Ala. 2013); *Walfish v. Nw. Mut. Life Ins. Co.*, No. 2:16-CV-4981, 2019 WL 1987013, \*7-8 (D.N.J. May 6, 2019)).[6] In these cases, the courts "evaluated evidence— something this Court cannot do under the Rule 12(b)(6) standard." *Aquino*, 671 F. Supp. 3d at 346. Indeed, as the Southern District explained in *Aquino*, "[a]t the motion to dismiss stage, the Court does not weigh the factors but merely assesses whether there are sufficient facts pleaded to render it plausible that Plaintiff could demonstrate she was an employee under the economic realities test at a later stage in the case." *Id.* at 345 (citing *Harper v. N.Y.C. Hous. Auth.*, 673 F. Supp. 2d 174, 180 (S.D.N.Y. 2009) (finding a plaintiff need only allege facts supporting a plausible inference to survive a motion to dismiss but need not make out a *prima facie* case according to factors that would be needed to be proved at a later stage)).

---

[6] Northwestern Mutual Life Insurance Company and Northwestern Mutual Investment Services, LLC were defendants in both *Rose* and *Walfish*. Although these decisions conclude that the plaintiffs were not the defendants' employees, the procedural posture of these decisions is enough to question their applicability to this matter at the present time. However, there are additional distinctions between these cases and the present matter. Most notably, the contracts governing the employment relationships were different. In *Rose*, the plaintiff was a college intern and the applicable contract was a "College Student Agent's Contract." *See Rose*, 220 F. Supp. 3d at 367-68. And in *Walfish*, the plaintiff entered into a "Full-Time Special or Soliciting Agent's Contract." *Walfish*, 2019 WL 1987013, at \*2. Nothing herein should be read as an indication of how the Court may rule on a motion for summary judgment at a later stage of this action, but there are significant distinctions that counsel against merely adopting the conclusions in *Rose* and *Walfish* in deciding the pending motion to dismiss.

In a footnote, Northwestern Defendants also cite fourteen decisions from various federal courts for the proposition that courts across the country consistently recognize that there is no employment relationship between insurance agents and insurance companies because the agents are independent contractors. *See* Dkt. No. 23-1 at 19 n.5. Not a single one of those decisions arose in the context of a motion to dismiss—thirteen were decided at summary judgment and one was an appeal from a decision rendered after an advisory jury trial. Northwestern Defendants' reliance on these cases further underscores the notion that the fact-intensive employer/employee inquiry is ill-suited for resolution at the present juncture.

Additionally, Northwestern Defendants may be correct that regulatory compliance requirements standing alone cannot create an employment relationship. *See* Dkt. No. 23-1 at 17-19. However, the complaint does not rely on compliance with regulatory requirements as a basis for Northwestern Defendants' status as Plaintiff's joint employer. Therefore, this argument misses the mark and does not impact the Court's conclusion herein.

Accordingly, the Court finds there are sufficient facts pleaded for purposes of withstanding a Rule 12(b)(6) motion on the issue of whether Northwestern Defendants were Plaintiff's employer within the meaning of the FLSA and NYLL. Northwestern Defendants' motion to dismiss on this basis is denied.

**C.    NYSHRL**

Plaintiff brings claims for discrimination and retaliation under the NYSHRL. *See* Dkt. No. 1 at ¶¶ 208-16. To allege discrimination in violation of NYSHRL a plaintiff must establish that "(1) he or she is a member of a protected class, (2) he or she was qualified to hold the position, (3) he or she suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Reichman v. City of New*

*York*, 179 A.D.3d 1115, 1116-17 (2d Dep't 2020) (citations omitted).  To plead retaliation in violation of NYSHRL, a complaint must contain allegations that "(1) [the plaintiff] engaged in a protected activity by opposing conduct prohibited thereunder; (2) the defendant was aware of that activity; (3) he or she suffered an adverse action based upon his or her activity; and (4) there was a causal connection between the protected activity and the adverse action."  *Id.* (citations omitted).

Northwestern Defendants argue that, for the same reasons as the FLSA and NYLL claims, Plaintiff has failed to adequately allege an employment relationship sufficient to support her NYSHRL claims.  *See* Dkt. No. 23-1 at 20.  Northwestern Defendants rely exclusively on the Second Circuit's decision in *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834 (2d Cir. 2022) for this argument.  *See id.*  Northwestern Defendants also contend that Plaintiff's NYSHRL retaliation claim fails to satisfy the third element as against them because Newman alone took the alleged adverse actions against her.  *See* Dkt. No. 23-1 at 20-21.  In their reply brief, Northwestern Defendants raise, for the first time, arguments that Plaintiff's NYSHRL discrimination claim also fails for lack of allegations of adverse action and that both NYSHRL claims (discrimination and retaliation) must be dismissed as against Northwestern Defendants because Plaintiff fails to allege facts sufficient to establish that she engaged in any protected activity directed at Northwestern Defendants or that Northwestern Defendants were aware of protected activity sufficient to support an inference of retaliation.  *See* Dkt. No. 25 at 13.

As a preliminary matter, the Court declines to address the arguments raised for the first time in Northwestern Defendants' reply brief.  *See Adecco USA, Inc. v. Staffworks, Inc.*, No. 6:20-CV-744, 2022 WL 16571380, *5 (N.D.N.Y. Nov. 1, 2022) ("The law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered") (citing *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85,

16

100 n.16 (2d Cir. 2007)); *see also Van Denburgh v. New York*, No. 1:24-CV-00989, 2025 WL 2483415, *6 n.5 (N.D.N.Y. Aug. 28, 2025) (declining to consider arguments related to NYSHRL, Title VII, and § 1983 discrimination claims raised for the first time in reply brief). Thus, the only arguments properly before the Court at this time are whether Plaintiff's NYSHRL claims should be dismissed as against Northwestern Defendants for failure to plausibly allege an employment relationship with, or adverse action taken by, these Defendants.

Simply stated, Northwestern Defendants contend they cannot be held liable for Newman's adverse actions. *See* Dkt. No. 23-1 at 20-21. As with their other arguments, this argument relies on Northwestern Defendants' theory that Plaintiff was merely an employee of Newman, who acted as an independent contractor for Northwestern Defendants. *See id.* at 7, 12, 17, 19-21.

In *Felder*, the case primarily relied upon by Northwestern Defendants, the Second Circuit recognized that "[a]t the motion to dismiss stage, a plaintiff's burden to answer this question [i.e., whether defendant is a joint employer] is not great." *Felder*, 27 F.4th at 845. "It must only be plausible and not merely speculative, that [the defendant] . . . exerted significant control over the terms and conditions of [her] employment . . . ." *Id.* (citing *Twombly*, 550 U.S. at 556).

A direct employee-employer relationship is not required to hold defendants liable as joint employers under the NYSHRL. *See Cannizzaro v. City of New York*, 206 N.Y.S.3d 868, 882 (N.Y. Sup. Ct. 2023). "'A conclusion that employers are "joint" assumes that they are separate legal entities, but that they . . . handle certain aspects of their employer-employee relationship jointly.'" *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (quoting *Clinton's Ditch Co-op Co., Inc. v. N.L.R.B.*, 778 F.2d 132, 137 (2d Cir. 1985)). Under the joint employer doctrine, "an employee may be formally employed by one entity but assigned to work

17

in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity." *Cannizzaro*, 206 N.Y.S.3d at 882 (citing *Arculeo*, 425 F.3d at 198).

New York State courts and federal district courts apply an immediate control test to determine whether an ostensible non-employer may be a joint employer. *See Brankov v. Hazzard*, 142 A.D.3d 445, 445-46 (1st Dep't 2016) (collecting cases). As explained in *Felder*, a "joint employer relationship" exists "when two or more entities, according to common law principles, share significant control of the same employee." *Felder*, 27 F.4th at 843 (emphasis omitted). "This means that an entity other than the employee's formal employer" is that employee's joint employer when it "has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities, such that we may properly conclude that a constructive employer-employee relationship exists." *Id.* at 844 (footnote omitted).

Although "any 'relevant factor [ ] may . . . be considered so long as [it is] drawn from the common law of agency[,]'" "the exercise of control is the guiding indicator." *Id.* (quoting *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 114 n.1 (2d Cir. 2000)); *see Branko*, 142 A.D.3d at 446 ("Of these factors, 'the extent of the employer's right to control the means and manner of the worker's performance is the most important factor.' If such control is established, other factors 'are then of marginal importance'") (quoting *Haight v. NYU Langone Med. Ctr., Inc.*, No. 13-CV-04993 2014 WL 2933190, *11 (S.D.N.Y., June 27, 2014)). Thus, "[a]s a functional matter, courts evaluate whether a joint employer relationship exists by considering the control exercised in setting the terms and conditions of the employee's work." *Cannizzaro*, 206 N.Y.S.3d at 882 (citing *Haight*, 2014 WL 2933190, at *11).

"Whether a person or business qualifies as a 'joint employer' is fact-intensive and ordinarily not appropriately resolved at the pleading stage." *Salvat v. Constr. Res. Corp.*, No. 17-

18

CV-4002, 2017 WL 6210849, *2 (S.D.N.Y. Dec. 7, 2017) (citing *Al-Kaysey v. L-3 Servs. Inc.*, No. 11-CV-6318, 2013 WL 5447686, *13 (E.D.N.Y. Sept. 27, 2013)).

Drawing all reasonable inferences in Plaintiff's favor, as the Court must, the complaint contains factual allegations that could establish Northwestern Defendants "exerted significant control" over the terms and conditions of Plaintiff's employment. Indeed, the NMWMC Agreement required Plaintiff's compensation to be paid "in accordance with the policies and procedures established by NMWMC and its affiliates"; required Plaintiff to adhere to NMWMC's rules, regulations, standards, polices, and procedures; and also stated that NMWMC would supervise Plaintiff's investment advisory and/or trust activities. Dkt. No. 1 at ¶¶ 41-46. Additionally, the AFR Form provided that Plaintiff could be terminated "as an Associate Financial Advisor from NMWMC." *Id.* at ¶ 37.

At this stage, Plaintiff has plausibly alleged the existence of a joint employer relationship with Northwestern Defendants for the purposes of withstanding a motion to dismiss. In other words, Plaintiff has met her "not great" burden. *Felder*, 27 F.4th at 845.

The Court also finds that Plaintiff has sufficiently alleged adverse action. According to the complaint, Plaintiff was discriminated against based on her sex and age because, *inter alia*, she was terminated despite exemplary performance and was treated differently than her younger male colleagues, in the absence of any legitimate, non-discriminatory justification. *See* Dkt. No. 1 at ¶¶ 6-8, 208-16. Northwestern Defendants ostensibly concede, for purposes of the present motion, that the complaint plausibly alleges adverse actions taken by Newman. *See* Dkt. No. 23 at 21 (acknowledging that termination, denial of severance benefits, and refusal to pay for Plaintiff's book of business were adverse actions attributable to Newman). Northwestern Defendants may be held liable for this alleged discrimination and retaliation by virtue of its

19

alleged joint employment of Plaintiff. *See Arculeo*, 425 F.3d at 198 ("[A]n employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer").

For these reasons, Northwestern Defendants' motion to dismiss the NYSHRL claims is denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Northwestern Defendants' motion to dismiss (Dkt. No. 23) is **DENIED**; and the Court further

**ORDERS** that the parties are directed to contact the assigned Magistrate Judge to schedule a Rule 16 Conference; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: March 30, 2026
          Albany, New York

Mae A. D'Agostino
U.S. District Judge

20